UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KIRK RICHARDS,

        Plaintiff,

v.

WALDEN SECURITY d/b/a
METROPOLITAN SECURITY
SERVICES, INC.,

        Defendant.

Civil No.: 1:20-cv-02866-JRR

**MEMORANDUM OPINION**

This matter comes before the court on Defendant Walden Security d/b/a Metropolitan Security Services, Inc.'s ("Walden") Motion for Summary Judgment. (ECF No. 61; the "Motion.")

On November 24, 2020, Plaintiff Kirk Richards filed his First Amended Complaint (ECF No. 23; the "Complaint") against his former employer, Defendant Walden Security ("Walden") alleging discrimination and retaliation claims in connection with his choice to wear a beard in observance of his religious faith. The Complaint originally contained ten counts: (1 and 6) Failure to Accommodate Religion under both Title 20 of the Maryland State Government Code ("Title 20") and Title VII of the Civil Rights Act of 1964 ("Title VII"); (2 and 7) Disparate Treatment Based on Religion under Title 20 and Title VII; (3 and 8) Hostile Work Environment Based on Religion under Title 20 and Title VII; (4 and 9) Retaliation under Title 20 and Title VII; and (5

and 10) Retaliatory Hostile Work Environment under Title 20 and Title VII.[1] The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons that follow, by accompanying order, the Motion will be denied as to Counts 1, 4, 6, and 9, and granted as to the remaining counts.

## BACKGROUND

Plaintiff alleges that Walden discriminated and retaliated against him because he wears a beard in observance of his religious faith. Plaintiff further alleges that Walden initially granted him a religious exemption from compliance with its grooming policy, but later revoked his religious accommodation, subjected him to harassment, and suspended and eventually terminated him for non-compliance with the grooming policy. (ECF No. 23, ¶1.)

Walden is a diversified security services company. (ECF No. 61-1, p.4.) In 2018, Walden was awarded a contract (the "Contract") with the Social Security Administration ("SSA") to staff Protective Security Officers ("PSO") at the SSA headquarters in Woodlawn, Maryland. *Id.* Plaintiff was employed by Walden as a PSO and was assigned to the SSA headquarters from approximately April through June 2019. (ECF No. 61, ¶2.) Under the Contract, "[a]ll PSOs performing under [the] Contract shall comply with the standards for appearance in accordance with the Protective Security Officer SMART Book."[2] (ECF No. 61-1, p.5.) Chapter 2.1.1 of the SMART Book outlines that, absent an approved religious or medical accommodation, PSOs must

---

[1] Without identifying which counts he is referring to, Plaintiff's Opposition states: "Kirk Richards has decided to no longer pursue his harassment claims against Walden." (ECF No. 69, p.1, n.1.) Based on the court's review of the Complaint (ECF No.23), the court considers the "harassment" claims to be Counts 3 and 8, Hostile Work Environment Based on Religion and Counts 5 and 10, Retaliatory Hostile Work Environment. The court also notes Plaintiff fails to respond to Defendant's Motion with respect to Counts 2 and 7, Disparate Treatment Based on Religion, and therefore considers these counts abandoned. *Mentch v. Eastern Sav. Bank FSB.,* 949 F. Supp. 1236, 1247 (D. Md. 1997) (dismissing as "abandoned" plaintiff's Title VII harassment claim because she did not raise it in her opposition to defendant's motion for summary judgment). Against this backdrop, the court will grant summary judgement as to the aforementioned counts by reason of Plaintiff's express election not to pursue claims or his failure to respond to Defendant's arguments.
[2] "SMART" stands for Security Manual and Resource Tool.

be clean-shaven. It further explains that if a PSO is granted an accommodation, facial hair must be no longer than one-quarter inch in length, because PSOs must be able to wear N95 respirators. The Occupational Health and Safety Administration ("OSHA") prohibits N95 respirators from being "worn by employees who have facial hair that comes between the sealing surface of the facepieces and the face." 29 C.F.R. 1910.134(g)(1)(i)(A); (ECF No. 61, ¶1).

Plaintiff alleges that, although he was granted the religious accommodation, toward the end of May 2019, his supervisors at Walden accused him multiple times of violating the grooming policy. (ECF No. 23, ¶¶32-37.) Additionally, Plaintiff alleges that these same supervisors, including the vice president of Walden, made numerous comments about his beard. The Complaint alleges that the vice president stated that he did not care if someone had a medical condition or religious reason; no exception of this sort would be made to the grooming policy. (ECF No. 23, ¶40.) Plaintiff alleges that he took the comments about his beard to be a recission of his religious accommodation and, therefore, sought written documentation of the reason for the recission. *Id.* ¶¶51-52.

On or about June 21, 2019, Plaintiff was suspended without pay for alleged non-compliance with Walden's grooming standards. *Id.* ¶59. He was told that he would remain suspended, and his employment status would be reviewed, unless he trimmed his beard. *Id.* ¶¶63-64. When Plaintiff refused to trim his beard to one-quarter of an inch, Walden terminated his employment. Plaintiff timely filed a charge of discrimination with the EEOC, which later issued a right to sue letter to Plaintiff. (ECF No. 61, ¶2.) Plaintiff filed the instant action, alleging religious discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the

Maryland Fair Employment Practices Act.³  42 U.S.C. §§2000e *et seq.*; MD. CODE ANN., STATE GOV'T §20-601 *et seq.*

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Additionally, there is a genuine issue over material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  When deciding a motion for summary judgment, a judge's determination focuses on whether sufficient evidence exists on a claimed factual dispute such that the matter should be submitted to a jury for resolution at trial. *Id*. at 249.  Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  A "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

At the summary judgment stage, the facts are considered in the light most favorable to the nonmoving party. *Ausherman v. Bank of America Corp.,* 352 F.3d 896, 899 (4th Cir. 2003). The nonmoving party, however, must "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).  On a

---

³ *See* n.1., *supra.*

4

motion for summary judgment "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## ANALYSIS

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Brennan v. Deluxe Corp.,* 361 F. Supp. 3d 494, 504 (D. Md. 2019) (quoting 42 U.S.C. §2000e-2(a)(1)). Specifically, Title VII makes it "an unlawful employment practice for an employer…to discharge any individual...because of such individual's religion." *Id.* §2000 e-2. Religion includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* §2000e-2(j). The definition of "religion" also "includes a requirement that an employer 'accommodate' an employee's religious expression." *Brennan*, 361 F. Supp. 3d at 505 (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017-18 (4th Cir. 1996)). "Courts recognize only two theories in asserting religious discrimination claims which are denominated as the disparate treatment and failure to accommodate theories." *Brennan*, 361 F. Supp. 3d at 509 (citations omitted).

### A. Failure to Accommodate Religion (Count 1 and 6)

Under Title VII, "an employer has a statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008); 42 U.S.C. §2000e(j). In religious accommodation cases, the Fourth Circuit employs a burden shifting

scheme similar to the one articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Firestone,* 515 F.3d at 312. To establish a prima facie case of religious discrimination based on a failure to accommodate, a plaintiff must demonstrate that: (1) he had a *bona fide* religious belief that conflicted with an employment requirement; (2) he informed the employer of this belief; and (3) he was disciplined for failure to comply with the conflicting employment requirement. *Id.*

"If the employee establishes a prima facie case of discrimination, the burden shifts to the employer to demonstrate that it could not accommodate the plaintiff's religious needs without undue hardship." *Id.* (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996)) (citations omitted). In particular, the employer must demonstrate either that "it provided the plaintiff with a reasonable accommodation for his religious observances," or that "such accommodation was not provided because it would have caused an undue hardship—that is, it would have 'resulted in more than a de minimis cost to the employer.'" *Id.* (quoting *Philbrook v. Ansonia Bd. of Educ.*, 479 U.S. 60, 67 (1986)).

For the purposes of the Motion only, Walden does not dispute Plaintiff's ability to establish a prima facie case for failure to accommodate. (ECF No. 61-1, p.17.) Nonetheless, Walden argues it is still entitled to summary judgment because it provided Plaintiff with a reasonable accommodation in light of the Contract and OSHA requirements to maintain facial hair at one-quarter inch in length from the skin surface. *Id.* Defendant urges that it accommodated Plaintiff's religious beliefs by allowing him to keep his beard in accordance with the grooming standards set forth in Chapter 2.1.1 of the SMART Book. *Id.* at p.6. Defendant further argues that, although Plaintiff wanted to maintain longer facial hair, it was not required to "provide the employee with his or her preferred accommodation." *Id.* at p.17 (quoting *Firestone Fibers,* 515 F.3d at 312).

6

Plaintiff contends that Walden's accommodation of allowing him to wear his beard at one-quarter inch length was not reasonable under Title VII. (ECF No. 69, p.14.) According to Plaintiff, Walden's proffered accommodation did not eliminate the religious conflict, but instead forced Plaintiff to choose between losing his job or losing his God. *Id.* at 16.

Walden argues that had it permitted Plaintiff to maintain longer facial hair, it would have suffered undue hardship via monetary penalties from the SSA for failure to comply with contract requirements. Walden primarily relies on *Bhatia v. Chevron U.S.A.,* 734 F.2d 1382, 1384 (9th Cir. 1984). In that case, the Ninth Circuit affirmed summary judgment for an employer that required machinists whose duties involved potential exposure to toxic gas to shave any facial hair that prevented them from achieving a gas-tight seal when wearing a respirator. *Id.*

Plaintiff argues that because he was able to safely perform his duties as a PSO without exposing Walden to any actual legal risks, safety risks, or financial penalties, Walden could have reasonably accommodated his religious observance without undue hardship. (ECF No. 69, p.12.) In particular, Plaintiff asserts it is undisputed that Walden never: issued N95s to its PSOs during his employment at SSA Woodlawn; trained its PSOs on how to properly wear and use N95s; medically cleared or fit-tested its PSOs for N95s; or stored N95s at SSA Woodlawn for its PSOs to use. *Id.* at p.18. Plaintiff further asserts: Walden had no protocols for determining whether it could supply a sufficient number of N95s to PSOs in the event of an emergency; Walden admitted it would not always need every PSO on duty to wear an N95 in the event of an emergency; and an emergency warranting the use of N95s never arose during Plaintiff's tenure as a PSO. *Id.*

In determining the reasonableness of an accommodation, the analysis focuses on "the extent of the employee's religious obligations and the nature of the employer's work requirements." *EEOC v. Greyhound Lines, Inc.,* Civil Action ELH-19-1651, at *26 (D. Md. Aug.

7

12, 2021). "Ordinarily, questions of reasonableness are best left to the fact finder." *Id.* In this case, Plaintiff argues that his religious obligations prohibit him from cutting his beard at all. Whether Walden's accommodation requiring Plaintiff to cut his beard to one-quarter inch in length was reasonable in light of Plaintiff's religious obligations is best decided by the fact finder. Further, Plaintiff has raised several facts that call into question whether Walden would actually have suffered an undue hardship had it accommodated Plaintiff's religious observation as it affects his facial hair. Indeed, Plaintiff argues that Walden never required employees to use N95 masks, demonstrating that Walden would not have incurred any hardship at all had it allowed Plaintiff to maintain a longer beard. Accordingly, genuine issues of material fact exist as to whether Walden's accommodation was reasonable and whether Plaintiff's requested accommodation would impose undue hardship on Walden. Therefore, this matter is not appropriately resolved on a motion for summary judgement. The Motion will be denied with respect to Counts 1 and 6.

### B. Disparate Treatment (Counts 2 and 7)

To demonstrate religious discrimination under a disparate treatment theory, a plaintiff must first demonstrate a prima facie case of discrimination by showing: (1) the plaintiff is a member of a protected class; (2) the plaintiff performed satisfactorily on the job; (3) the plaintiff suffered an adverse employment action; and (4) the treatment plaintiff was subjected to differed from similarly situated employees outside the protected class. *Brennan v. Deluxe Corp.,* 361 F. Supp. 3d 494, 506-07 (D. Md. 2019).

After the plaintiff establishes a prima facie case of religious discrimination, the defendant must proffer a non-discriminatory explanation for the actions taken. *McDonnell Douglas Corp., v. Green,* 411 U.S. 792, 802 (1973). If the defendant does so, the burden shifts back to plaintiff, who is required to prove that the defendant's proffered justification is merely a pretext, and that

the challenged actions were taken because of the plaintiff's religion. *McDonnell Douglas*, 411 U.S. at 804-805.

Defendant argues that it terminated Plaintiff for legitimate, non-discriminatory reasons—that his refusal to shave his beard meant he could not comply with OSHA and contract requirements. Defendant maintains there is no evidence that it held animus toward Plaintiff because of his religion or treated anyone outside the protected class more favorably than Plaintiff. (ECF No. 61.)

Plaintiff's opposition fails to address Defendant's arguments that Counts 2 and 7 are entitled to summary judgment. The court considers Plaintiff's failure to respond as an abandonment of these claims. *See Mentch v. Eastern Sav. Bank FSB.,* 949 F. Supp. 1236, 1247 (D. Md. 1997) (dismissing as "abandoned plaintiff's Title VII harassment claim because she did not raise it in her opposition to defendant's motion for summary judgment"). Accordingly, the Motion will be granted with respect to Counts 2 and 7.

**C. Hostile Work Environment Based on Religion (Counts 3 and 8) and Retaliatory Hostile Work Environment (Counts 5 and 10)**

As discussed in n.1., *supra*, the court understands Plaintiff to have withdrawn his claims under Counts 3, 5, 8, and 10. Additionally, Plaintiff's Opposition (ECF No. 69) does not address any of Defendant's arguments raised in its Motion as to these counts. Accordingly, summary judgment will be granted as to Counts 3, 5, 8, and 10.

**D. Retaliation (Counts 4 and 9)**

Title VII prohibits an employer from retaliating against an employee because he engaged in protected activity, such as complaining about discrimination. *See* 42 U.S.C. §2000e-3. Similar to Plaintiff's failure to accommodate claims, the court employs the *McDonnell Douglas* burden-shifting framework. Under this method of proof, Plaintiff must demonstrate "(1) [he] engaged in

9

protected activity; (2) that the employer took an adverse action against [him]; and (3) that a causal link exited between the adverse activity and the protected action." *Jacobs v. N.C. Admin. Office of the Courts,* 780 F.3d 562, 578 (4th Cir. 2015) (quoting *Haulbrook v. Michelin N. Am., Inc.,* 252 F.3d 696 (4th Cir. 2001)). "The employer then has the burden to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason for its actions." *Rhoads v. FDIC,* 257 F.3d 373, 392 (4th Cir. 2001) (quoting *Beall v. Abbott Labs.,* 130 F.3d 614, 619 (4th Cir. 1997)) (inner quotation marks omitted). If the defendant does so, "[t]he burden then shifts back to the plaintiff to show that the proffered reason is pretext." *Jacobs,* 780 F.3d at 578.

For purposes of this Motion, Walden does not dispute that Plaintiff engaged in protected activity when he requested a religious accommodation. (ECF No. 61-1, p.29.) Nonetheless, Defendant argues that Plaintiff's claim fails because the alleged harassment Plaintiff contends he experienced did not occur because he requested a religious accommodation. *Id.* Instead, Walden argues that the alleged "harassment" occurred because Plaintiff never received an April 16, 2019, letter, and mistakenly believed that Walden did not require him to trim his beard. *Id.* According to Defendant, the letter of April 16, 2019, was from one of Plaintiff's supervisors explaining that his religious accommodation was approved, subject to a length limitation requirement. (ECF No. 61-1, p.12.) According to Walden, due to a "miscommunication," Plaintiff did not learn about the April 19th letter until after a conversation with one of his supervisors on July 10, 2019. *Id.* at p.13. Plaintiff never trimmed or cut his facial hair to one-quarter inch in length as outlined in the letter.

Walden further argues that there is no factual basis to conclude that Plaintiff's request for a religious accommodation, as opposed to his refusal to trim his facial hair to one-quarter inch in length, was the reason for Plaintiff's termination. (ECF No. 61-1, p.31.) Walden asserts that Plaintiff requested his religious accommodation in April of 2019, nearly three months prior to his

termination in June 2019. *Id.* Walden proffers that a "lapse of two months between the protected activity and the adverse action is sufficiently long as to weaken significantly the inference of causation." *Id.* (quoting *Horne v. Reznick Fedder & Silverman,* Case No. 05-1025, 154 Fed. Appx. 361, 364 (4th Cir. 2005)) (citations omitted).

Plaintiff argues that a reasonable juror could find that Plaintiff's protected activity of asking for a religious accommodation of his beard is substantively and temporally causally connected to his termination. (ECF No. 69, p.24.) Plaintiff further argues that, even if the court determines that Walden's concerns about avoiding legal and safety risks are legitimate non-retaliatory reasons, there is still enough evidence for a reasonable juror to find Walden's explanation is pre-text, and, therefore, summary judgment is inappropriate. *Id.* at 23.

There are several facts in the record that speak to whether Plaintiff was fired because of his religious practice or his refusal to trim his beard. The weight and credibility of those facts are best determined by a fact finder. Importantly, Plaintiff raises the fact that Walden never prepared to utilize, or actually utilized, the N95 masks that served as the basis for requiring Plaintiff to trim his beard to one-quarter inch. The finder of fact must evaluate the credibility of Walden's claims that it had a legitimate purpose for terminating Plaintiff. Further, whether a 2-month lapse is sufficient to weaken the causal nexus depends on the particular factual circumstances of this case and will require consideration of when Plaintiff received notice from Walden regarding the requirement that he trim his beard. Defendant admits that Plaintiff did not receive correspondence relating to his beard until a month after it was sent. This, too, raises a dispute of fact sufficient to bar summary judgment. Accordingly, the Motion will be denied with respect to Counts 4 and 9.

## CONCLUSION

For the reasons set forth herein, Defendant Walden Security d/b/a Metropolitan Security Services, Inc.'s Motion for Summary Judgment (ECF No. 61) will be **GRANTED in part, DENIED in part,** as follows: the Motion will be **GRANTED** with respect to Counts 2, 3, 5, 7, 8, and 10; the Motion will be **DENIED** with respect to Counts 1, 4, 6, and 9.  Judgment will be entered in favor of Defendant Walden Security d/b/a Metropolitan Security Services, Inc. with respect to Counts 2, 3, 5, 7, 8, and 10 and the case will proceed on Counts 1, 4, 6, and 9. The court will issue an accompanying order in accordance with this memorandum opinion.

/s/_____
Julie R. Rubin
United States District Judge